FILED
SUPERIOR COURT
OF GUAM

2024 JUN -7 PM 3: 39

CLERK OF COURT

BY:_____ 𝔖m

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| DANIEL L. HERRING, MARIA LOURDES HERRING, and LIANG HERRING,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID L. HERRING, FRANCES M. HERRING, and JEREMY T. HERRING,<br><br>Defendants. | CIVIL CASE NO. CV1126-16<br><br>**DECISION AND ORDER GRANTING RULE 12(B)(2) MOTION TO DISMISS AND GRANTING IN PART RULE 15(A) MOTION FOR LEAVE TO AMEND THE COMPLAINT** |

## INTRODUCTION

This matter came before the Honorable John C. Terlaje on March 15th, 2024, for a Motion Hearing on David L. Herring, Frances M. Herring, and Jeremy T. Herring ("Defendants'") Motion to Dismiss the Fraud Claims of the Plaintiffs. David L. Herring, Frances M. Herring, and Jeremy T. Herring represented themselves. Curtis Van de veld appeared for Daniel L. Herring, Maria Lourdes Herring, and Liang Herring (the "Plaintiffs").

Based on the relevant law and authorities the Court now issues the following decision and order **GRANTING** Defendant's Motion to Dismiss the Plaintiff's Claims and **GRANTING IN PART** Plaintiff's Motion for Leave to Amend the Complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs initially filed their Verified Complaint on December 20, 2016, alleging three causes of actions: (1) Fraud against Defendants David and Frances Herring, (2) Fraud against Defendant David Herring, (3) Fraud and Abuse of Trust Obligations against all three Herring

Defendants. Verified Compl., (December 20, 2016). Then, on August 27, 2019, Plaintiffs filed a Second Amended Complaint alleging the following claims against the Herring Defendants: (1) Fraudulent Breach of Fiduciary Duty, Count I; (2) Fraudulent Breach of Fiduciary Duty, Count II; and (3) Fraudulent Breach of Fiduciary Duty and Conspiracy to Breach Fiduciary Duty. Mot. to Dismiss Second Am. Verified Compl.; Mem. of P. & A. (October 7, 2019). In response, on October 7th, 2019, Defendants filed a Motion to Dismiss all three Causes of Action. On April 12, 2022, Plaintiffs filed their Opposition with a Motion for Leave to Amend. Opp'n to Mot. to Dismiss with Mot. for Leave to Amend, (April 12, 2022). On April 26, 2022, Defendants filed their Reply. Reply to Civ. Case No. CV1126-16, (April 26, 2022).

The relevant facts regarding the Motion to Dismiss are as follows:

1. The Second Amended Complaint (SAC) alleges that, in 1988, Plaintiff Liang deeded her Tamuning Property to her son, Defendant David, and Defendant David allegedly entered into an oral trust relationship with Plaintiff Liang "for the beneficial use of the premises to create a stream of income to be transmitted to Liang to use the funds for Liang's subsistence." Mot. to Dismiss Second Am. Verified Compl.; Mem. of P. & A. ¶ 2 (October 7, 2019).

2. The SAC further alleges that, in 1994, Defendant David then leased the Tamuning Property to John and Elizabeth Kim ("the Kims") and transmitted funds to Plaintiff Liang. According to the SAC, on July 1, 2004, Defendants David and Frances then leased a portion of the property to "David Properties", an entity owned by Defendants David and Frances, but failed to provide a copy of the lease agreement to Plaintiff Daniel or Plaintiff Liang. Count I also alleges that, in August 2004, Defendant David transferred

the Tamuning Property to his brother, Plaintiff Daniel, at which point the Kims' Lease was assigned to Daniel. *Id.* at ¶ 2-3.

3. The SAC further alleges that on February 23, 2010, Defendants David and Frances entered into an agreement for a reduction of rent to the Kims in exchange for a lump sum, the agreement for which was allegedly not provided to Plaintiffs Daniel or Liang. Defendants David and Frances received a $25,000.00 lump sum security deposit on November 19. 2010, after they purportedly executed a Consent to Assignment of Lease Agreement, assigning the Kim Lease to J & Lee Corporation. *Id.* at ¶ 3.

4. Count II of Plaintiffs' First Cause of Action alleges that Defendant David agreed with Plaintiff Daniel to enter into a loan agreement with BankPacific in the amount of three-hundred-thousand-and-seventy-five-thousand-dollars ($375,000.00) for the purpose of funding a joint business venture. The Complaint then alleges that Defendant David removed over two-hundred-thousand-dollars ($200,000.00) from the account between July 16 and July 30 in 2010 for his own use. Defendant David agreed to repay the loan in its entirety, and supposedly did make payments on the loan until 2014, when the loan was placed into default for non-payment. *Id.* at ¶ 3.

5. Count II also alleges that Plaintiffs Daniel and Maria have made payments on the loan, and have therefore suffered actual damages, and that Plaintiffs Daniel, Maria and Liang experienced emotional and physical distress due to Defendant David's actions. *Id.* at ¶ 3.

6. Plaintiffs' Second Cause of Action alleges that Defendant David convinced Plaintiffs Daniel and Maria to give Defendant David Power of Attorney. Defendant then allegedly used the Power of Attorney to procure a mortgage loan in May 2013 from Finance Pro, Inc. on the home occupied by Defendant Jeremy without Plaintiffs Daniel and Maria's

consent. Count III further alleges that the mortgage has damaged Daniel and Maria's credit, preventing them from borrowing money. *Id.* at ¶ 3-4.

7. Finally, Plaintiffs' Second Cause of Action alleges a conspiracy between the Herring Defendants and new Defendants Finance Factors, Inc. ("FFI"), Core Tech Capital, Inc. ("CTCI"), and Ho Eun ("Defendant Ho") "to hide and disguise the true nature of the financial transaction entered into between the Defendants and by their action obliging Plaintiff (sic) Daniel and Maria." *Id.* at ¶ 4.

8. In response, Defendants filed a Motion to Dismiss based on four general arguments: (1) the plaintiffs allegedly do not have standing regarding both counts of the First Cause of Action; (2) the plaintiffs allegedly fail to state a claim upon which relief can be granted regarding the first count of the First Cause of Action; (3) the Statute of Limitations allegedly bars both counts of the First Cause of Action; and (4) Plaintiffs allegedly fail to plead fraud with sufficient particularity regarding the Second Cause of Action. Mot. to Dismiss Second Am. Verified Compl.; Mem. of P. & A. ¶ 2 (October 7, 2019).

## II.  LAW AND DISCUSSION

"A Rule 12(b)(6) motion tests the sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When reviewing a Rule 12(b)(6) motion, the Court must "construe the pleading in the light most favorable to the non-moving party, and resolve all doubts in the non-moving party's favor." *First Hawaiian Bank v. Manley*, 2007 Guam 2 ¶ 9 (citation omitted). Dismissal is appropriate only when the non-moving party "can prove no set of facts in support of his claim which would entitle him to relief." *Taitano v. Calvo Fin. Corp.*, 2008 Guam 12 ¶ 9 (quoting *Vasquez v. Los Angeles City.*, 487 F.3d 1246, 1249 (9th Cir. 2007)).

Further, under Rule 9(b)," the circumstances constituting fraud or mistake shall be stated with *particularity*" and that "malice, intent, knowledge, and other conditions of mind of a person may be averred *generally.*" GRCP 9(b) (emphasis added). When reviewing a Rule 12(b)(6) dismissal for failure to plead a fraud claim pursuant to Rule 9(b), we must determine *de novo* whether the complaint pleaded facts with sufficient particularity. *Taitano I*, 2008 Guam 12 ¶ 9 (citing *Yourish v. Cal. Amplifier*, 191 F.3d 983, 992 (9th Cir. 1999)). This is because "[f]raud claims are special matters that are subject to a heightened pleading standard." *Ukau v. Wang*, 2016 Guam 26 ¶ 35. Although a plaintiff is not required "to prove a claim of fraud at the pleading stage," they must set forth the "claim with sufficient detail to provide notice to defendants as to what particular fraudulent action is being alleged." *Id.* ¶ 47. On the issue of fraud, there are five elements: (1) a misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to induce defraud or induce reliance; (4) justifiable reliance; and (5) resulting damages. *Trans Pac. Exp. Co. v. Oka Towers Corp.*, 2000 Guam 3 ¶ 23.

Finally, Defendant's Motion to Dismiss raises the issue of standing, which is not a Rule 12(b)(6) motion, but a Rule 12(b)(1) motion. Guam courts have noted in that past that:

> The United States Supreme Court has recently chastised itself and other courts for failing to distinguish between dismissals pursuant to Rule 12(b)(1) and Rule 12(b)(6), stating; "[o]n the subject matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this court and others have been less than meticulous." Arbaugh, 546 U.S. at 511. The court further characterized such dispositions which fail to consider the difference as "unrefined" and "drive-by jurisdictional rulings." Id., (quoting Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 91 (1998). Thus, this Court will distinguish between such dismissals, and as in this case, where a party raises the issues of standing and the plaintiffs' ability to maintain the suit as a party to the action, Rule 12(b)(6) is not applicable. Rather, Rule 12(b)(1) is the proper authority under which to request dismissal for "lack of jurisdiction over the subject matter." GRCP Rule 12(b)(1); Quitugua v. Flores, 2004 Guam 19 ~ 31, n.12; see also McLain v. Real Estate Bd. Of New Orleans, Inc., 444 U.S. 232,241

(1980); and Colorado Environmental Coalition v. Wenker, 353 F.3d 1221, 1227 (10th Cir. 2004).

*Guam Housing and Urban Renewal Auth. v. Guam Capital Investment Corp.*, CV0150-08.

This Court agrees.

"Standing is a threshold jurisdictional matter." *Benavente v. Taitano*, 2006 Guam 15, ¶14 (Sup. Ct. Guam 2006) (quoting *Guam Imaging Consultants, Inc. v. Guam Mem'l Hosp. Auth.*, 2004 Guam 15, ¶ 17 (Sup. Ct. Guam 2004). "Thus, we have held that a court has no subject matter jurisdiction to hear a claim when a party lacks standing." Id.; see also Taitano v. Lujan, 2005 Guam 26, ¶ 15 (Sup. Ct. Guam 2005). However, so long as there are sufficient facts plead in the complaint from which to infer jurisdiction, a Rule 12(b)(1) motion must be denied. *Tarleton v. Meharry Medical College*, 717 F.2d 1523,1529 (6th Cir.1983); *Davis v. Ohio Barge Line, Inc.*, 697 F.2d 549,552 (3rd Cir.1983); *Wright v. Gregg*, 685 F.2d 340, 342 (9th Cir.1982); *Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375, 1382 (10th Cir.1978), cert. denied, 441 U.S. 952 (1978).

## A. Do the Plaintiffs Have Standing for the First Cause of Action (Fraudulent Breach of Fiduciary Duty)?

A litigant may claim standing if he or she possesses "the irreducible constitutional minimum of standing" under Article III of the U.S. Constitution. *Benavente v. Taitano*, 2006 Guam 15 ¶ 15. In other words, "[a] party acquires standing... by suffering an injury in fact." *Id.* ¶ 18. Absent a statute conveying standing, a plaintiff must satisfy the following elements for each and every claim pursued: (1) suffer a concrete, particularized, and actual or imminent injury-in-fact, (2) demonstrate a causal connection between the injury and the complained-of conduct, and (3) show that a favorable decision by the court will likely redress the injury. *Id.*

Defendants argue in their Motion to Dismiss that Liang Herring does not have standing regarding both counts of the First Cause of Action, because Plaintiff Liang deeded away her interest in the property in 1988; further, Defendants allege that Daniel Herring does not have standing either, because he does not have a fiduciary relationship regarding the property. Finally, Defendants argue that Maria Herring does not have standing for the second count of the First Cause of Action, because she was not a party to the loan agreement.

### 1. Plaintiff Liang Herring Has Standing to Allege the First Cause of Action (Fraudulent Breach of Fiduciary Duty) Regarding Both Counts, Despite Conveying Her Property in 1988

Defendants argue that "taking the allegations in the Complaint as true, at the time of Defendant David's alleged fraudulent acts, Plaintiff Liang had no interest in the Tamuning Property, having transferred the Property to Defendant David on March 15, 1988." Mot. to Dismiss Second Am. Verified Compl.; Mem. of P. & A.¶ 8 (October 7, 2019). The Tamuning Property was "transferred by Quitclaim deed ("the Deed"), and on the face of the Deed, was not subject to the restrictions or conditions Plaintiff Liang described in Count I of the Complaint." *Id.*

Finally, Defendants point out that Plaintiff Liang "has not described any writing memorializing the supposed conditions attached to conveyance of the property" and "in the absence of such writings, Plaintiff Liang is barred by the Statute of Frauds from establishing any such conditions by parol evidence." *Id.* Thus, Defendants argue that Plaintiff Liang's "failure to plead or attach any memorandum conditioning the transfer of the Tamuning Property on payments renders any such agreement deficient pursuant to the Statute of Frauds, and Plaintiff Liang has no standing to assert any interest in the property or rental payments made on the property after she conveyed her interest to Defendant David in 1988, even if Defendant David gratuitously transferred rental income to her for a period of time following the conveyance." *Id.* at ¶ 9.

Plaintiffs respond in their Opposition, however, that the alleged oral agreement constitutes a constructive trust, and that the Statute of Frauds, which requires certain contracts to be in writing, does not apply to constructive trusts. Opp'n to Mot. to Dismiss with Mot. for Leave to Amend, (April 12, 2022) (citing *Adams v. Young*, 255 Cal.App.2d 145, 63 Cal.Rptr.877, "when a party accepts title to land under an oral agreement of holding the property for the benefit of the transferor a constructive trust is applied though no written memoranda exist.") Under Guam law, a constructive trust is imposed against one who, in any way, holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. *In re Moylan*, 2011 WL 4915003 (October 18, 2011).

Although the Court cannot determine at this time if such a constructive trust exists in this case, it is theoretically plausible. It is also plausible that such a trust would not be bound by the requirements of the statute of frauds. Therefore, construing the pleading in the light most favorable to the non-moving party, Plaintiff Liang has standing to allege both counts in the first cause of action (Fraudulent Breach of Fiduciary Duty).

### 2. Daniel Herring Does Not Have Standing Regarding Count I of the First Cause of Action (Fraudulent Breach of Fiduciary Duty), Because He Does Not Have a Fiduciary Relationship Regarding the Tamuning Property

Defendants argue that "Plaintiffs have not alleged the basis for Plaintiff Daniel's standing to bring a claim for breach of fiduciary duty." Mot. to Dismiss Second Am. Verified Compl.; Mem. of P. & A.¶ 10-11 (October 7, 2019). According to Defendants, even if this Court assumes that Defendant David has a fiduciary duty via constructive trust to Plaintiff Liang, "there is no allegation that Plaintiff Daniel was involved in the purported establishment of the trust or that Defendant David stood in any other fiduciary capacity to Plaintiff Daniel." *Id.* at ¶ 11. In opposition, Plaintiffs mention that "Plaintiff Daniel is the son to whom the remainder interest [of

the property] was intended to be given," but it is unclear how this could plausibly establish a fiduciary obligation on the part of Defendant David to Plaintiff Daniel. Opp'n to Mot. to Dismiss with Mot. for Leave to Amend ¶ 7, (April 12, 2022). Under Guam law, Plaintiff Daniel must claim that he suffered an injury in fact and "demonstrate a causal connection between the injury and the complained-of conduct." *Benavente v. Taitano*, 2006 Guam 15 ¶ 15. Given that Plaintiff Daniel does not have a fiduciary relationship with Defendant David regarding the constructive trust for the Tamuning Property, no causal connection exists for him to claim an injury. Therefore, Plaintiff Daniel Herring does not have standing regarding Count I of the First Cause of Action (Fraudulent Breach of Fiduciary Duty).

### 3. Maria Herring Does Not Have Standing Regarding Count II of the First Cause of Action (Fraudulent Breach of Fiduciary Duty), Because She Was Not a Party to the Loan Agreement

Count II in the First Cause of Action (Fraudulent Breach of Fiduciary Duty) involves the three-hundred-and-seventy-five-thousand dollar ($375,000.00) loan agreement with BankPacific, entered into by Defendant David and Plaintiff Daniel to fund a joint business venture. The Complaint alleges that Defendant David took two-hundred-thousand dollars ($200,000.00) for his own use. Verified Compl., (December 20, 2016). Defendants argue that Count II of the Complaint "appears to allege that Defendant David owed a fiduciary duty to Plaintiff Daniel" because of the loan agreement. *Id.* at ¶ 13. Defendant, points out, however, that Plaintiff Maria was not a party to the loan agreement "or the alleged partnership" and was not a party "to the supposed subsequent agreement between Plaintiff Daniel and Defendant David regarding repayment of the loan." *Id.* In their Opposition, Plaintiffs have no response regarding the status of Plaintiff Maria's standing regarding the loan. Opp'n to Mot. to Dismiss with Mot. for Leave to Amend, (April 12, 2022). Under Guam law, Plaintiff Maria must claim that she suffered an injury in fact regarding the loan

and "demonstrate a causal connection between the injury and the complained-of conduct." *Benavente v. Taitano*, 2006 Guam 15 ¶ 15. Given that Plaintiff Maria was not a party to the loan agreement, no causal connection exists for her to claim an injury. Therefore, Plaintiff Maria Herring does not have standing regarding Count II of the First Cause of Action (Fraudulent Breach of Fiduciary Duty).

### B. Have Plaintiffs Plead Fraud with Sufficient Particularity Regarding Defendants Frances and Jeremy?

As mentioned above, although a plaintiff is not required "to prove a claim of fraud at the pleading stage," they must set forth the "claim with sufficient detail to provide notice to defendants as to what particular fraudulent action is being alleged." *Id.* ¶ 47. On the issue of fraud, there are five elements: (1) a misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to induce defraud or induce reliance; (4) justifiable reliance; and (5) resulting damages. *Trans Pac. Exp. Co. v. Oka Towers Corp.*, 2000 Guam 3 ¶ 23.

Defendants argue that Plaintiffs have failed to allege a basis for their fraud claim against Defendant Frances regarding the First Cause of Action, because Defendant Frances was not in a part of the constructive trust used in the alleged fraud. Further, Defendants argue that Plaintiffs have not plead fraud with sufficient particularity against Defendants Frances and Jeremy in the Second Cause of Action, because Defendants did not hold the Power of Attorney that was used to allegedly defraud Plaintiffs.

### 1. Plaintiffs Have Failed to Plead Fraud with Sufficient Particularity Against Frances Herring Regarding Count I of the First Cause of Action (Fraudulent Breach of Fiduciary Duty), Because They Do Not Allege That She Made a Representation with the Intent to Induce Fraud or Reliance

Defendants argue that Plaintiffs fail to allege "the basis for their claim for Fraudulent Breach of Fiduciary Duty against Defendant Frances." Mot. to Dismiss Second Am. Verified Compl.; Mem. of P. & A.¶ 11 (October 7, 2019). In particular, "Count I alleges that Defendant David owed Plaintiff Liang fiduciary duties based on an oral trust established between Plaintiff Liang and Defendant David in 1988," but Defendants contend that "Plaintiffs have failed to allege how Defendant Francis stood in a 'fiduciary capacity to Plaintiffs Liang and Daniel." *Id.* It is unclear how Defendant Frances could be guilty of a Fraudulent Breach of Fiduciary Duty, if no Fiduciary Duty existed in the first place. In Opposition, Plaintiffs argue that:

> Defendant David later transferred the property into the name of his spouse Defendant Frances who knew of the continuing obligation to hold the property in a fiduciary capacity for Plaintiff Liang... [And] Defendants David and Frances' continuing the holding of title to the real property under the promise by Defendant Davids to use the property for the benefit of Plaintiff Liang, was intended to induce the reliance of Plaintiff Liang in Defendant David and continue Defendant David's holding of the title in the trust, despite that Defendants David and Frances intended to combine and conspire to use the property for their own financial benefit and gain and not for the benefit of Plaintiff Liang.

*Id.* at ¶ 4 and 7.

It is unclear what exactly Plaintiffs are alleging here; it appears that they are claiming that Defendant Frances *knew* about the alleged constructive trust between Defendant David and Plaintiff Liang, and therefore was a part of inducing Plaintiff Liang into reliance on Defendant David's promise to create a constructive trust. Ironically, however, all of this makes it clear that Defendant Frances was not a part of the constructive trust alleged by Plaintiffs.

Therefore, it is not possible that Defendant Frances made a "misrepresentation" with the "intent to induce defraud or induce reliance" regarding a fiduciary duty that she did not possess. *See Trans Pac. Exp. Co. v. Oka Towers Corp.*, 2000 Guam 3 ¶ 23. Given that Defendant Frances does not have a fiduciary relationship with Plaintiffs regarding the constructive trust for the Tamuning Property, Plaintiffs have failed to plead fraud with sufficient particularity against Defendant Frances Herring herself, regarding Count I of the First Cause of Action (Fraudulent Breach of Fiduciary Duty).

### 2. Plaintiffs Have Failed to Plead Fraud with Sufficient Particularity Against Frances Herring and Jeremy Herring Regarding the Second Cause of Action (Fraudulent Breach of Fiduciary Duty and Conspiracy to Breach Fiduciary Duty), Because Plaintiffs Fail to Allege that Frances or Jeremy Conspired to Commit a Tortious Act

According to the Complaint, Defendant "convinced Plaintiffs Daniel and Maria to give Defendant David a General Power of Attorney to act for benefit of these Plaintiff's minor children should Plaintiffs Dnaiel and Maria travel outside of Guam." Second Am. Verified Compl. ¶ 10 (August 27, 2019). The Complaint then alleges that "sometime in May of 2013, Defendants Frances and Jeremy were aware of the Power of Attorney and... conspired to use the Power of Attorney to secure a mortgage from Finance Pro Inc. ..." *Id.* Defendants argue that this Complaint "does not attach the Power of Attorney or allege how Defendants Frances and Jeremy knew or were supposed to know what the limitations of the Power of Attorney were, or what Plaintiffs Daniel and Maria intended Defendant David to use the Power of Attorney for." Mot. to Dismiss Second Am. Verified Compl.; Mem. of P. & A. ¶ 15 (October 7, 2019). Defendants then go on to argue that regarding Defendants Frances and Jeremy, "Plaintiffs have failed to allege a misrepresentation, knowledge of falsity, or the requisite intent to defraud." *Id.*

In their Opposition, Plaintiffs do not address any of the Defendants' arguments against the Second Cause of Action nor do they even mention the Power of Attorney issue. Opp'n to Mot. to Dismiss with Mot. for Leave to Amend, (April 12, 2022). "In both civil and criminal cases... we rely on the parties to frame the issues of decision and assign to courts the role of neutral arbiter of matters the parties present." *See U.S. v. Sineneng-Smith*, 590 U.S. 371 (2020). Typically, the Court needs the Plaintiffs to at least respond to the Defendants' arguments. It is again very unclear what Plaintiffs are claiming here. Are they alleging that Defendants Frances and Jeremy each had their own fiduciary duty to the Plaintiffs? How is this possible if neither Frances nor Jeremy held the Power of Attorney? Or is this a civil conspiracy claim where a fiduciary duty is somehow unnecessary amongst all of the parties, even if it is a conspiracy to breach a fiduciary duty?

Assuming that this is even possible under Guam law (and the Court is not saying that it is possible), the allegation does not amount to a cause of action for conspiracy. For instance, the elements of a civil conspiracy are "(1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." *See United Talent Agency, LLC v. Markel American Insurance Company*, 2023 WL 6449399 (citing *City of Industry v. City of Fillmore*, 198 Cal. App. 4th 191, 212 (2011)). Plaintiffs allege that "sometime in May of 2013, Defendants Frances and Jeremy were aware of the Power of Attorney and... conspired to use the Power of Attorney to secure a mortgage from Finance Pro Inc. ..." Second Am. Verified Compl. ¶ 10 (August 27, 2019). Here, Plaintiffs seemingly allege that Defendants Frances and Jeremy "agreed to a common plan" to get a bank loan, not "commit a tortious act."

In this case, the tortious act would be fraud, which requires a "misrepresentation, knowledge of falsity, and a requisite intent to defraud." *See Trans Pac. Exp. Co. v. Oka Towers*

*Corp.*, 2000 Guam 3 ¶ 23. The Complaint does not describe Defendants Frances and Jeremy taking part in a misrepresentation with the intent to defraud. In fact, the Complaint makes it sound like the alleged "formation of the group" took place *after* Defendant David made the alleged misrepresentation (promising to use the power of attorney for a specific purpose). Therefore, Plaintiffs have hailed to plead fraud with sufficient particularity against Frances Herring and Jeremy Herring regarding the Second Cause of Action (Fraudulent Breach of Fiduciary Duty and Conspiracy to Breach Fiduciary Duty).

### C. Do the Statute of Limitations Bar Both Counts of the First Cause of Action?

The three-year statute of limitations for fraud claims is set forth in Title 7 GCA section 11305, which states in relevant part:

> (d) An action for relief on the ground of fraud or mistake. The cause of action in such a case is not to be deemed to have accrued *until the discovery by the aggrieved party of the facts constituting the fraud or mistake.*

The Supreme Court has held that the question of "when [Plaintiff] *'discovered'* the [alleged wrongdoing] is important in determining the commencement of the statute of limitations period on any claim that the deed constituted an agreement to convey the property." *See Burkhart v. Miranda*, 2013 Guam 2 ¶ 27 (emphasis added); *see also Taitano I*, 2008 Guam 12 ¶ 28 ("In cases where the exact timing of specific events is critical for determining fraud, lack of precision in alleging dates can be fatal to a pleading.").

In *Gayle v. Hemlani*, 2000 Guam 25 (Guam 2000), a constructive fraud case involving the three year statutes of limitations in 7 G.C.A. § 11305(4), Guam Courts stated that:

> We have held that the statute of limitations will begin to run when the plaintiff suspects or should suspect that his injury was caused by wrongdoing or that someone has done something wrong to him. *Custodio v. Boonprakong et. al.*, 1999 Guam 5, ¶ 27 (interpreting the discovery rules in the context of Title 7 GCA § 11308 (1994) with respect to a medical malpractice claim) (citation omitted).

Further, we observe that:
A plaintiff need not be aware of the specific acts necessary to establish the claim...
[o]nce the plaintiff has a suspicion of wrongdoing, and therefore an incentive to
sue, he must decide whether to file suit or sit on his rights... Consequently, if a
suspicion exists, the plaintiff cannot sit back and wait for the facts to find him as
the burden of finding the facts falls upon his shoulders.

*Gayle v. Hemlani*, 2000 Guam 25, ¶ 24 (citations omitted).

### 1. The First Cause of Action Count I (Fraudulent Breach of Fiduciary Duty) Is Barred by the Statute of Limitations

The Defendants' Motion claims that Plaintiff Liang allegedly had reason to suspect wrongdoing over a decade before Plaintiffs filed suit. Specifically, "in Count I of the original Complaint, Plaintiff Liang admitted under oath that she noticed that Defendant David had transmitted significantly reduced moneys from the rental payments on the Tamuning property in August 2004." Mot. to Dismiss Second Am. Verified Compl.; Mem. of P. & A.¶ 12 (October 7, 2019). Therefore, according to Defendants, "[although] Plaintiff Liang claims to have 'discovered' that Defendant David had accepted a lump sum in consideration of reduced rent in May 2015, the statute of limitations begins to run when Plaintiff Liang has suspicion of wrongdoing, which she clearly did in 2004, and in response to which she requested that Defendant David transfer the property to Plaintiff Daniel." *Id.*

In Opposition, Plaintiffs argue that "the statute of limitations does not run while the Defendant secrets the events of his wrongful actions" and insinuate that Defendant David hid information from Plaintiff Liang. Opp'n to Mot. to Dismiss with Mot. for Leave to Amend ¶ 5-7, (April 12, 2022). However, the Plaintiffs never argue that Defendant David's allegedly deceitful behavior prevented Plaintiff Liang from discovering the reduced rental payments in 2004. *Id.* Further, Plaintiffs cite a case in favor of their assertion, but the case addresses very different facts where the Defendant in a libel case hid their identity and said Defendant was found to be "equitably

estopped from asserting statute of limitations when, as result of intentional concealment, plaintiff is unable to discover defendant's actual identity." *See Bernson v. Browning-Ferris Industries of Ca., Inc.,* 7 Cal. 4th 926 (1994). Further, that same case holds that "Defendant's fraud in concealing a cause of action against him tolls applicable statute of limitations, *but only for that period during which a claim is undiscovered by plaintiff or until such time as plaintiff, by exercise of reasonable diligence, should have discovered it." Id.* (emphasis added).

Plaintiffs do not argue that Defendant prevented Plaintiff Liang from discovering the rental income disparity in 2004, nor do they even dispute it. Opp'n to Mot. to Dismiss with Mot. for Leave to Amend, (April 12, 2022). Further, because of her suspicions concerning the income disparity in 2004, Plaintiff Liang requested that the property be transferred to Plaintiff Daniel, which occurred via Deed of Gift in August 2004. Second Am. Verified Compl. ¶ 6 (August 27, 2019). Defendants argue that "Plaintiff Liang should have investigated the reduced payments in 2004, and her failure to do so renders her claim time barred." Mot. to Dismiss Second Am. Verified Compl.; Mem. of P. & A.¶ 12 (October 7, 2019). Guam Courts agree that "if a suspicion exists, the plaintiff cannot sit back and wait for the facts to find him as the burden of finding the facts falls upon his shoulders." *Gayle v. Hemlani,* 2000 Guam 25, ¶ 24 (citations omitted). Further, "the statute of limitations will begin to run when the plaintiff suspects or should suspect that his injury was caused by wrongdoing or that someone has done something wrong to him." *Id.* (citing *Custodio v. Boonprakong et. al.,* 1999 Guam 5, ¶ 27). Therefore, the First Cause of Action Count I (Fraudulent Breach of Fiduciary Duty) is barred by the statute of limitations.

### 2. The First Cause of Action Count II (Fraudulent Breach of Fiduciary Duty) Is Barred by the Statute of Limitations

Defendant David and Plaintiff Daniel agreed to enter into a mortgage on the Tamuning Land and placed the loan proceeds ($375,000.00) into a joint account; in 2010, however, Defendant David allegedly removed $203,578.70 from the account. Second Am. Verified Compl. ¶ 8 (August 27, 2019). According to the Second Amended Complaint, in 2010, "Plaintiff Daniel confronted Defendant David about the withdrawal of the funds and Defendant David promised to repay the loan in its entirety." *Id.* Defendants argue that "the Complaint notes that Plaintiff Daniel was aware of the facts that give rise to Count II as of July 2010." Mot. to Dismiss Second Am. Verified Compl.; Mem. of P. & A.¶ 14 (October 7, 2019). Further, "to the extent he is seeking redress for Defendant David's supposed usurpation of the funds from the Bank Pacific loan, he has been aware of such conduct since 2010, and has not alleged facts that would toll the statute of limitations pursuant to the discovery rule." *Id.* In their Opposition, Plaintiffs do not address this argument at all. Opp'n to Mot. to Dismiss with Mot. for Leave to Amend, (April 12, 2022). Plaintiffs argue that Count I tolls the statute of limitations, but they do not address Count II. *Id.*

Without a counterargument from Plaintiffs, the Court does not see any reason to disagree with Defendants, who rightly point out that Plaintiff Daniel suspected foul play on behalf of Defendant David back in 2010 but chose not to report it. Guam Courts agree that "if a suspicion exists, the plaintiff cannot sit back and wait for the facts to find him as the burden of finding the facts falls upon his shoulders." *Gayle v. Hemlani*, 2000 Guam 25, ¶ 24 (citations omitted). Further, "the statute of limitations will begin to run when the plaintiff suspects or should suspect that his injury was caused by wrongdoing or that someone has done something wrong to him." *Id.* (citing

*Custodio v. Boonprakong et. al.*, 1999 Guam 5, ¶ 27). Therefore, the First Cause of Action Count II (Fraudulent Breach of Fiduciary Duty) is barred by the statute of limitations.

### D. Can Plaintiffs Amend the Complaint if their Claims Are Dismissed?

Plaintiffs Moves the Court for leave to Amend the Complaint pursuant to Guam Rule of Civil Procedure 15. Guam Rules of Civil Procedure Rule 15(a) provides that a party must seek leave from the court to amend a complaint once an answer has been filed, but that such leave "shall be freely given when justice so required." Guam Rule of Civil Procedure Rule 15(a) is identical to Federal Rule of Civil Procedure 15(a). In *Arashi & Co., Inc. v. Nakashima Enterprises, Inc.*, 2005 Guam 21, the Supreme Court of Guam provided a framework for determining whether to grant or deny leave to amend a pleading under Rule 15(a) of the Guam Rules of Civil Procedure by adopting the rationale in *Foman v. Davis*, 371 U.S. 178 (year). The United States Supreme Court determined in *Foman* that leave to amend should always be liberally granted. However, the court must review certain factors which may properly lead a court to deny leave to amend. *Arashi*, 2005 Guam 21 ¶ 16. Foman identified the following four factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman*, 371 U.S. at 182.

The Court does not detect any bad faith or dilatory motive on the part of the Plaintiffs; however, the Plaintiffs have already amended the Complaint twice now. *See* Verified Compl. (December 20, 2016); First Am. Verified Compl. (April 10, 2017); and Second Am. Verified Compl. (August 26, 2019). This weighs against Plaintiffs regarding the "repeated failure to cure deficiencies" factor in *Foman*. Given that Defendants have not argued that they will be "unduly prejudiced," however, the Court leans toward allowing Plaintiffs one last chance to amend the

Complaint. If the Plaintiffs fail on their third amendment, however, the Court does not recommend that there be a fourth. One last chance at amending the Complaint means one last chance at amending the Complaint. Finally, the Court will not grant leave to amend the First Cause of Action (Fraudulent Breach of Fiduciary Duty), because the Court found that both counts were barred by the statue of limitations. Therefore, amending the First Cause of Action (Fraudulent Breach of Fiduciary Duty) would be "futile" under the *Foman* factors.

### E. CONCLUSION AND ORDER

Based on the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss the Plaintiff's Claims Regarding the First Cause of Action, both Counts, and the Second Cause of Action, and also **GRANTS IN PART** Plaintiff's Motion for Leave to Amend the Complaint. Any Amended Pleadings shall be filed within fifteen (15) days of this order. A Further proceedings hearing shall be heard on 07|02|2024 at 9:00 am. (via zoom).

**SO ORDERED**, this ___7___ day of __June__ 2024.

_____
**HON. JOHN C. TERLAJE**
**Judge, Superior Court of Guam**